IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:07-CV-42-FL(3)

| | |
|---|---|
| TANIA BALLERO for T.B., a minor,<br>  Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>  Defendant. | **MEMORANDUM &<br>RECOMMENDATION** |

  This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings **[DE's 15 & 18-19]**. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Supplemental Security Income ("SSI"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-15]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-18]** be GRANTED, and that the final decision by Defendant be AFFIRMED.

## Statement of the Case

  Plaintiff, T.B., acting through his mother, filed an application for SSI on October 8, 2004 (Tr. 15). The application alleged that Plaintiff became disabled on July 1, 2000, due

1

to attention deficit hyperactivity disorder as well as speech and learning impairments  *Id.*
These applications were denied at the initial and reconsideration levels of review.  *Id.*  A
hearing was later held before an Administrative Law Judge ("ALJ"), who found Plaintiff was
not disabled during the relevant time period in a decision dated May 19, 2006. *Id.* at 15-21.
The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's
request for review, rendering the ALJ's determination as Defendant's final decision.  *Id.* at
5-7.  Plaintiff filed the instant action  on March 12, 2007  **[DE-4]**.

## Analysis

A child is considered disabled for SSI purposes only if the child suffers from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less that 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  A three-step sequential process is utilized when evaluating children's SSI claims.  20 C.F.R. § 416.924.  This process requires the ALJ to consider, in order, whether the child: 1) is engaged in substantial gainful employment; 2) has a severe impairment; and 3) has an impairment that meets, medically equals or functionally equals the requirements of a listed impairment.  *Id.*  As with the process for adults, if the ALJ determines that a child is or is not disabled at any point in this process, review does not proceed to the next step.  *Id.* Thus, under the applicable regulations, an ALJ may find a child to be disabled within the meaning of the Social Security Act only if he finds that the child has a severe impairment or combination of impairments that meets, medically equals or functionally equals an impairment listed in Appendix 1.  20 C.F.R. § 416.924(d)(1); 42 U.S.C. 1382c(a)(3)(C)(i).

2

To determine whether a child's impairments functionally equals a listed impairment, the ALJ evaluates a child's functional limitations in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for himself or herself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

These regulations provide that a child is "disabled" if he or she has an impairment or impairments of "listing-level severity" that is an "extreme" limitation in one of these domains or "marked" limitations in two or more domains. 20 C.F.R. § 416.926a(a). A marked limitation in a domain is found when an impairment interferes seriously with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An extreme limitation in a domain is found when the impairment interferes "very seriously" with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

The Court's role in this case is limited to determining whether substantial evidence exists in the record to support the Commissioner's findings. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support of particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Where there is substantial evidence to support the finding below, this Court may not substitute its judgment for that of the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *Id.* In determining whether substantial evidence

supports the Commissioner's decision, the Court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 1997). If substantial evidence exists to support the ALJ's finding that a claimant is not disabled, this Court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. Laws, 368 F.2d at 642.

The ALJ employed the sequential evaluation process in this matter. First, he determined that Plaintiff had not engaged in substantial gainful activity since the date of his application for benefits (Tr. 17). At step two, the ALJ determined that Plaintiffs has the following severe impairments: 1) attention deficit hyperactivity disorder ("ADHD"); 2) disruptive behavior disorder; 3) speech and language delays; and 4) a learning disability in reading. *Id.* In completing step three, however, the ALJ determined that these impairments were not severe enough to meet or medically equal any listed impairment *Id.* In so concluding, the ALJ examined in detail the evidence relating to each of the domains set forth in the regulations. *Id.* at 17-20. Ultimately, the ALJ determined that Plaintiff had less than marked or no limitations in each domain. *Id.* Based on this determination, the ALJ concluded that Plaintiff was not disabled at any time through the date of his decision. *Id.* at 21. The ALJ relied upon substantial evidence in reaching this conclusion. A summary of this substantial evidence now follows.

First, the ALJ determined that Plaintiff had less than marked limitations on functioning in the domain of acquiring and using information. *Id.* at 18. The ALJ noted that

4

"[s]chool records indicates [Plaintiff] repeated the 2nd grade, while his mother recollects he repeated the 1st and 3rd grades in school." *Id.* at 18. This discrepancy is ultimately not dispositive because the ALJ cited an abundance of other evidence demonstrating that Plaintiff had a less than marked limitation in this domain. For example, Plaintiff's third grade teacher reported that he had no problems in this domain and that his functioning was age-appropriate. *Id.* at 95. While he was in the third grade, Plaintiff was assessed by his teacher with having a: 1) reading instructional level of 3.4; 2) math instructional level of "strong 3rd grade"; and 3) written language instructional level of "high level 2nd." *Id.* at 94. Plaintiff received special education services from a writing teacher. *Id.* at 106. This teacher opined that Plaintiff had a: 1) current instructional reading level of 3rd grade; 2) current instructional math level of 3rd grade; and 3) current written language instructional level of 1st grade. *Id.* The writing teacher stated that Plaintiff "a very serious problem" expressing ideas in written form. *Id.* at 107. However, in further assessing Plaintiff's ability to acquire and use information, the writing teacher noted that Plaintiff had no problems with regard to: 1) comprehending oral instructions; 2) understanding school and content vocabulary; 3) reading and comprehending written material; 4) comprehending and doing math problems; 5) understanding and participating in class discussions; 6) providing organized oral explanations and adequate descriptions; 7) learning new materials; and 8) applying problem-solving skills in class discussions. *Id.* On IQ testing, Plaintiff had verbal, performance and full scale scores of 94, 107, and 100, respectively. *Id.* at 175. The Vineland administered in May 2005 indicated that his receptive and written communication skills were adequate while his

expressive language skills were "at the borderline level." *Id.* at 182. The psychologist who administered the Vineland noted that Plaintiff appeared to have average intellectual functioning. *Id.* at 183.

Next, the ALJ determined that Plaintiff had less than marked limitation in the domain of attending and completing tasks. Plaintiff was initially diagnosed with ADHD in March 2002. *Id.* at 129 Specifically, Plaintiff has problems paying attention and requires redirection and extra support to remain focused. *Id.* at 92. However, the record indicates that medication has a significant positive effect on this condition. *Id.* at 129, 134, 142, 149, 199, 202, 205-207, 221. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Although Plaintiff had a history of poor compliance, there is significant improvement when medications are restarted (Tr.129-136, 202-208). On several occasions over a period of two years it was reported that Plaintiff had no side effects from his medications. *Id.* at 135, 201-208. On April 8, 2005, one of Plaintiff's teachers stated that Plaintiff had no problems in this domain. *Id.* at 96. Dr. Christine Burch evaluated Plaintiff on May 2, 2006. *Id.* at 225-227. She noted that Plaintiff was taking his medication again and the only reported side effects were mild. *Id.* at 225.

The ALJ then addressed the domain of interacting and relating with others. He determined that Plaintiff had a less than marked limitation in this domain. *Id.* at 19. Plaintiff's psychiatrist described him as "friendly and cooperative." *Id.* at 129. In an individualized education program created for Plaintiff by his teachers, it was noted that

Plaintiff: 1) was a very bright student; 2) frequently participated in class discussions; and 3) gets along with his teachers and peers. *Id.* at 165. One of Plaintiff's teachers opined that he had no problems interacting and relating with others. *Id.* at 97. Another teacher stated that Plaintiff had no, or only slight, problems in this domain other than obvious problems he had: 1) making and keeping friends; and 2) using adequate vocabulary and grammar to express thoughts/ideas in general/everyday conversation. *Id.* at 109. During another psychological evaluation, Plaintiff was described Plaintiff as "a friendly, talkative child who maintained good eye contact with the examiner and smiled frequently." *Id.* at 174. Dr. Edmund Burnett, reported that Plaintiff was alert and cooperative with a "very mild" speech impediment. *Id.* at 182. Generally, however, Dr. Burnett felt that Plaintiff's speech was clear and coherent. *Id.*

Plaintiff's teachers consistently observed that he had no problems in the domain of caring for himself. *Id.* at 99, 111. Dr. Charles Burkhart and Dr. Bonny Gregory both reviewed the record and determined that no problems were alleged or noted in this area. *Id.* 143, 222. Ultimately, the ALJ determined that Plaintiff had less than marked limitations in this domain. *Id.* at 19.

In the domain of health and physical well-being, the ALJ found that Plaintiff had less than marked limitation. *Id.* at 20. Again, Dr. Burkhart and Dr. Gregory stated that Plaintiff had no problems in this domain. *Id.* at 143, 222. On June 13, 2005, Dr. Patricia Wright examined Plaintiff. Dr. Wright concluded that Plaintiff was "doing well and is compliant with medication and without side effects . . .[h]e sleeps well, has a good appetite, and has

7

Case 4:07-cv-00042-FL   Document 20   Filed 10/30/07   Page 7 of 9

done well with academic and behavioral performance at school." *Id.* at 202.

Finally, the ALJ found that Plaintiff had no limitations in the domain of moving about and manipulating objects noting that Plaintiff "has no significant problems and none are alleged." *Id.* at 20, 89. Plaintiff's teachers consistently indicated that he had no problems in this domain. *Id.* at 98, 110. Likewise, Dr. Burkhart and Dr. Gregory determined that Plaintiff had no problems in this domain as well. *Id.* at 143, 222.

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Plaintiff lists three assignments of error, each of which asks this Court to re-weigh evidence already considered by the ALJ. Pl. Mem., DE 15-2, pg. 6-9. Specifically, Plaintiff alleges that the ALJ improperly weighed the evidence concerning the domains of: 1) acquiring and using information; 2) attending and completing tasks; and 3) interacting and relating with others. *Id.* However, this Court must uphold Defendant's factual findings if they are supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, his entire claim is meritless.

## Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-15]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-18]** be GRANTED, and the final decision by Defendant be

AFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 30th day of October, 2007.

_____

William A. Webb

U.S. Magistrate Judge